The judge who saw the workman at his work has fixed an amount which seems to us reasonable and just.

We have concluded not to change it—neither to increase nor decrease it.

For reasons assigned, the judgment appealed from is affirmed.

———

(53 South. 471.)

No. 18,182.

GILMORE v. GILMORE et al.

(Oct. 17, 1910. Rehearing Denied Nov. 14, 1910.)

*(Syllabus by the Court.)*

1. SUCCESSION — SIMULATION — PARENT AND CHILD.

Where a mother executes in favor of one of her children a written instrument, purporting to witness a sale, for cash, of movable property, and a check, drawn by the vendee to the order of the vendor, by the latter indorsed, and by the bank stamped, "paid," is produced, and there is no other evidence as to the transaction, save the testimony of the vendee, who affirms its verity, the fact that the vendee admits that he obtained the money, with which to pay the price, from the vendor, on the day of the sale (saying that it was paid him for services previously rendered), does not authorize the conclusion that the transaction was intended as a simulation though there may be found grounds upon which the coheirs of the vendor may demand collation.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 208–212; Dec. Dig. § 69.*]

2. SUCCESSION—RIGHTS OF COHEIRS.

One who in behalf of the widow in community and usufructuary is put in charge of a *newspaper*, in which his coheirs are interested as part owners, cannot be allowed to segregate particular matter which he finds in the paper, and which is, or had been, copyrighted, and issuing it with some changes as an independent publication, though as under the authority of the

paper appropriate the profits to his personal advantage.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 318–321; Dec. Dig. § 82.*]

3. APPEAL AND ERROR (§ 1178*)—DISPOSITION OF CAUSE—MODIFICATION OF JUDGMENT.

Plaintiff having obtained judgment decreeing that he recover a salary as manager of a newspaper from a certain date until the sale of the paper, which sale is also decreed, and said judgment not being predicated upon any information as how long plaintiff might continue to discharge the duties of manager, and it being suggested that he has abandoned the position, though the sale has not yet taken place, the judgment is set aside in so far as it fixes the term for which the salary is to be paid, and the case remanded for further investigation and action on that subject.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4604–4620; Dec. Dig. § 1178.*]

Appeal from Civil District Court, Parish of Orleans; George H. Theard, Judge.

Action by Abner B. Gilmore against Dr. Victor L. Gilmore, John Y. Gilmore, and others. From the decree, defendant John Y. Gilmore appeals. Judgment modified and affirmed, and case remanded.

Charles Rosen, for appellant John Y. Gilmore. Oliver S. Livaudais, for appellee Dr. Victor L. Gilmore. Horace M. Roberts, for other appellee.

### Statement of the Case.

MONROE, J. Plaintiff represents that he owns five-eighths interest in the Sugar Planters' Journal; that his brothers, Dr. Victor Gilmore and John Y. Gilmore, and his sister, Mrs. Mary Gilmore, wife of Edward M. Harnett, own the other three-eighths; the property having belonged to the community existing between their parents, and plaintiff, after the death of his father, having purchased the one-half or four-eighths interest of his mother, who is now also deceased; that he is unwilling longer to hold the property in common; and that he desires a partition, and is entitled to compensation as manager of the paper since June 9, 1909, at the rate of $150 per month. He further alleges that the property is not susceptible of partition in kind, and he prays for the appointment of appraisers and experts, for citation upon the parties in interest, and, after due proceedings, for judgment ordering the sale of the property and partition of the proceeds.

The defendant Dr. Victor L. Gilmore admits the ownership of the property as alleged in the petition, and submits the matter to the court.

The defendant John Y. Gilmore alleges that the property in question is owned in the proportions of two-eighths to plaintiff and to each of the defendants. He denies that plaintiff is entitled to $150 per month as manager, and alleges that he owes an accounting for the administration of the property since the death of his father and likewise since the death of his mother. He further alleges that part of the Journal was a copyrighted, alphabetical, list of the sugar and rice planters in this state, with their addresses and information concerning them, and that plaintiff has appropriated to his own use the proceeds of the sales thereof, and should account for them, and he prays for judgment accordingly. The answer of Mrs. Harnett is substantially the same.

Plaintiff by supplemental petition denies the the Directory of the Louisiana Sugar Planter is part of the Sugar Planters' Journal, or that defendants have any right therein. He admits that there was a "List of Louisiana Sugar Planters," which may have been copyrighted, but alleges that the copyright was lost by failure to comply with the law on the subject, and that even if it were still effective, the directory now being published is essentially different, and is his property.

He denies that defendants have any right to an account from him of his administration prior to the death of their mother, and he alleges that in any event such demand must

be asserted in their mother's succession, now in process of administration. He further alleges that as to the administration since the death of his mother defendants have received monthly accounts, and have been informed that the books and papers are open to them.

John Y. Gilmore, by supplemental answer, avers that the alleged purchase by plaintiff of their mother's one-half interest in the property in question was a simulation, and he prays for judgment as in his original answer. And at the beginning of the trial he objected to the filing of the supplemental petition and of the injection into the case of the issue thereby presented. But, the objection having been overruled, "it was agreed, in order to have all issues settled in this proceeding, that the court should include in its judgment the determination of the question of the list or directory of planters."

It appears from the evidence that in 1870 the father of the litigants before the court founded a weekly paper called the "Sugar Bowl and Farm Journal," the name of which was changed afterwards to the "Sugar Planters' Journal," and that, for some seven or eight years, prior to his death, he employed his son, the plaintiff, who was then a minor, to assist him in its publication, and the latter, no doubt, learned about all there was to be learned of the business. In May, 1900, the father died, and in July of that year the widow in community and heirs were put in possession by judgment of court, the former as half owner and usufructuary, and the latter subject to the usufruct of their mother, who thereupon confided the management of the Journal to the plaintiff under an agreement made at the time or later to the effect that he should receive one-half of the profits as compensation for his services. Mrs. Gilmore died on June 9, 1909, and we understand that her succession has been opened and is now being administered by her executor, though there is no specific evidence in the record before us in regard to any testamentary disposition that she may have made of her estate, nor are we informed what has been done in the way of settling the succession, or whether the Journal, or any interest in it, was inventoried as belonging thereto. The present suit was instituted on July 12, 1909, and as part of his evidence plaintiff offered an act of sale under private signature from his mother to him of date August 7, 1905, purporting to convey to him her one-half interest in the Journal for $1,000 cash, the receipt of which is acknowledged. The authenticity of this document is undisputed and there is no other testimony in regard to it than that given by plaintiff. In fact, with the exception of some testimony given by the publisher of another paper as to the value of such services as have been rendered by plaintiff in connection with the Journal, a copy of the original "Sugar Bowl & Farmers' Journal," one of two copies of the Sugar Planters' Journal, a copy of the Directory of Louisiana Sugar Planters for 1909, and a few statements furnished by plaintiff from month to month, since the death of his mother, of the business of the Journal, there is no other evidence in the record than plaintiff's testimony. From that it appears that he was not altogether satisfied with the compensation that he was receiving for his services in connection with the Journal, to which he devoted nearly, if not quite, all his time, and for which he did the managing, editing, publishing, bookkeeping, and all the work, save the typesetting and press work. He says in his testimony:

"I had demurred at the amount that I was making, and she said [his mother]: 'I will pay you more later.' I said: 'When?' 'Leave that to me.' I left it to her until 1903. Then she was going away—1905, I think it was. Before she went away, I asked my mother when she would pay me the money. She said she would pay me over and above what appeared on the books as received by me. She said: 'I will pay you now, since I am going away, or next week.'"

And he goes on to say that she then gave him $1,000 in cash for past services, in ad-

dition to the one-half the profits that he had been receiving. Being asked over what period of time the services so compensated extended, he replied: "Several or more years. I don't recollect exactly—no less than two." As to what took place after the money had been paid to him, he testifies as follows:

"And she paid me the money. When she did, she said: 'Now, my son, you must make good use of that money. Why not put it where you will save it?' I didn't know what to do, whether to go in a building association or take the money and use it otherwise; and she said: 'I would suggest that you buy your brother John's interest.' I said that I didn't care to do business with my brother John. We talked over that and came to the conclusion that the best use that I could make of that $1,000 was to buy her interest, which I did. I bought her interest for $1,000."

He says that he deposited the money to the credit of his account in the State National Bank, and then drew a check for it in favor of his mother in payment for her half interest in the Journal (the several acts having all been done on the same day); and he produces a check to the order of his mother and indorsed by her dated August 7, 1905, which appears to have been paid on that day. For a while after the sale plaintiff's compensation continued to be one-half of the profits, but he says that, as between his mother, as usufructuary of one half, and himself, as owner of the other half, which he had bought, it was then agreed that for his services in managing the property he should thereafter receive $30 per month more than she, which agreement was acted upon until her death.

With regard to the list of planters referred to in the pleadings, it appears that in 1888 the father of the litigants copyrighted an "Alphabetical List of the Louisiana Sugar and Rice Planters," and thereafter published it in his paper, presumably as a matter of valuable information to his subscribers, or advertisers, or both. After the death of the father, however, plaintiff discontinued the publication of the list in the paper, and be-

gan the publication, as a separate enterprise, of a similar list, which he has issued once a year, and which bears the title (for the year 1909):

"The Latest and most Complete Directory of the Louisiana Sugar Planters for 1909. Embracing all those who manufacture Sugar and the Larger Ones who only Grow Cane. Showing Capacity and Freight Receivings. Address of Every Factory. Compiled by the Sugar Planters' Journal, 520 Poydras Street, New Orleans, La., Price $1.00 the copy. Copyright applied for. All rights reserved."

The expense of this publication, as we understand the testimony, has been borne by the Sugar Planters' Journal, with which, by its title, it is identified, though plaintiff has considered the publication his personal property, and during the life of his mother, and with her consent, appropriated the profits to his own use.

Plaintiff was cross-examined at considerable length concerning the profits of the Journal as bearing upon his claim for salary at the rate of $150 a month since the death of his mother, but we do not find ourselves very accurately informed by his testimony. At one time he says:

"The volume of business would approximate—I just roughly say—a profit of $2,500 a year."

At another time he says that his half of the profits between the date of his father's death and his acquisition of his mother's half interest in the paper amounted approximately to $1,000 a year. Again, he speaks of another source of revenue which does not appear to figure in the $2,500 and $1,000 estimates above mentioned, to wit, advertising contracts under which he received goods, or credits, which could be used in the purchase of goods in lieu of money. The amount realized in that way appears, however, to have been inconsiderable. Still, again, we find in the record certain statements prepared by plaintiff for the benefit of his coheirs and owners purporting to show the business of the paper for the months of July, August, September, October, and November, 1909 (fol-

lowing the death of Mrs. Gilmore), from which it appears that the profits were as follows:

July, $45.80; August, $91.03; September, $116.91; October, $129.45; November, $64.99; a total for the five months of $448.18, or an average of, say, $89.63 per month.

There was judgment in the district court decreeing the litigants to be part owners of the Sugar Planters' Journal and the Directory of Louisiana Sugar Planters, in the proportions of five-eighths to plaintiff and one-eighth to each of the defendants, ordering the property to be sold, to effect a partition, allowing plaintiff $30 per month (to be paid from the proceeds), by way of compensation as manager, from June 9, 1909, to the day of the sale, reserving defendant's right to a further accounting, in the succession of Mrs. Gilmore, with respect to the management between May 16, 1900, and June 9, 1909, and referring the parties to a notary for the consummation of the partition. John Y. Gilmore alone has appealed, and plaintiff alone has answered the appeal. He complains of the judgment, in that it recognizes defendant as part owner of the "Directory," and allows him (plaintiff) but $30, instead of $150, per month for his services after June 9, 1909.

### Opinion.

It is beyond dispute that on August 7, 1909, the mother of the litigants executed a written instrument, purporting to convey her half interest in the property here in question to plaintiff for the recited consideration of $1,-000 cash, and that plaintiff on that day made a check for that amount in her favor, which bears her indorsement, and was duly paid by the bank on which it was drawn, and we find nothing in the record to authorize the conclusion that the transaction thus evidenced was intended to accomplish either more or less than appears on its face. It is true that plaintiff obtained the $1,000 with which he paid the price from his mother, but he tes-

tifies, and no one contradicts him, that it was paid to him by her for services rendered. Whether, however, he received it in payment or as a manual gift, the fact remains, and can hardly be disputed, that he did receive it from his mother, and that he returned it to her as the price of her half interest in the Journal—a proceeding to which she was necessarily a party, and which, taken in connection with the act of sale executed by them, indicates that, so far from its being intended as a mere simulation, the deliberate purpose of the parties to said act was to vest such title in the plaintiff as would be safe from successful attack. There may be grounds upon which to predicate a demand for collation, but there are none upon which the charge of simulation, which is the only matter presented for our consideration, can be sustained.

The copyrighted, alphabetical list of the sugar planters must have been regarded by the founder of the Journal as a thing of value, or it would never have been copyrighted or published, and we are at a loss to understand why it should not be valuable when published in the Journal, if the plaintiff found a profit in publishing it outside of the Journal. It is true that in so doing he may have furnished some additional information, but the fact remains that it continued to be an alphabetical list of the planters, and the further fact appears that it was issued by plaintiff as "compiled by The Sugar Planters' Journal," and that the cost of its issuance was paid from the funds of that Journal. Under these circumstances, and as plaintiff in his management of the Journal from the date of his father's death was administering property in which his coheirs were interested, and as the "list" in question was a part of that property, it appears to us that he has no standing now to assert that because the copyright lapsed, whether by his fault or otherwise, or because he made changes in it, it became his own.

When the judgment appealed from was rendered, it was not known, and could not have been known, whether plaintiff would continue to act as manager of the Journal until the sale; and counsel for defendant says in his brief that as a fact plaintiff "gave up the running of the paper" on May 10, 1910, and that since then the management has devolved on the defendant, Mrs. Harnett. Assuming the statement to be true, it is clear that plaintiff is not entitled to a salary as manager until the sale of the paper, which sale is yet to be made. As to the amount that he should be allowed during the time that he continued to act as manager, the evidence before us furnishes no sufficient basis upon which to increase the award of the judge a quo. We are of opinion, however, in view of the facts stated, that the time during which he is to be paid should be determined, either before the notary or in another hearing before the district court.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by striking therefrom the words "from June 9, 1909, until the day of the sale," and inserting, in lieu thereof, the words "during the time, after the death of his mother, that he continued to act as such manager," and that the case be remanded, as to that point, for the ascertainment of the duration of plaintiff's services as manager. It is further decreed that in all other respects said judgment be affirmed, plaintiff to pay the costs of the appeal.